ROBERT E. CHETWOOD ET AL., PLAINTIFFS IN ERROR, v. FREDERICK T. WINSTON, DEFENDANT IN ERROR.

1. A devise of a fee followed by a limitation that if such devisee shall die "leaving no lawful issue," created an estate tail by the rules of the common law.
2. Nor is the effect of such terms impaired by a further direction that in case of such dying without issue, the lands shall be sold and the money divided between the testator's children, excepting one of them

In error to the Supreme Court.

For the plaintiffs in error, *R. E. Chetwood* and *B. Williamson.*

For the defendant, *F. G. Burnham.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an action of ejectment. It is not necessary to state the facts of the case, inasmuch as the entire ground of the controversy is comprised in a single clause of the will of one Philip T. Denman, deceased. The testamentary provision thus referred to is in the words following, viz.: " I give and bequeath to my fourth son, Isaac Denman, and his heirs, all the remainder of my lands, being the homestead where I now live; and if he shall die leaving no lawful issue, then and in that case my will is, that it should all be sold and the moneys arising to be equally divided among all my children, excepting my son Allen, who is not to receive anything from this said sale."

The question is whether, by force of this disposition, Isaac Denman, by the rules of the common law, took an estate tail, for if he did, it is admitted the plaintiffs cannot prevail in this suit.

And that such is the legal effect of this language I can have no doubt. The decisions stand in favor of such conclusion in an almost unbroken line. The words in question have

acquired a strictly technical signification, which is opposed to their popular acceptation, for the settled rule is, that when an estate is devised to a person and his heirs, with a limitation over in case of his dying without issue, such words of limitation, when unexplained by the context, and when they apply to real estate, import an indefinite failure of issue, *i. e.*, an extinction of issue at any period. Such was the doctrine clearly asserted by the Supreme Court of this state, in the case of *Morehouse* v. *Cotheal*, 1 *Zab.* 480; and although this decision was subsequently reversed by this court, yet, inasmuch as no opinion was then given, it is, I think, more respectful to presume that the decision in the last resort went upon some side issue—and there appears to have been such collateral aspects to the case—than that there was a determination in this court to violate an established legal canon affecting the title to land. At all events it is plain that in the subsequent case of *More* v. *Rake*, 2 *Dutcher* 574, this court sanctioned and adopted, as a basis of its judgment, the rule in question.

Therefore, the only inquiry is, whether there is anything in the context in the present case which will have the effect of impairing the technical form of the terms here used. It is argued that the subsequent limitation, directing, in case of the failure of issue, the land to be sold and the moneys arising to be equally divided among the testator's children, with the exception of one son, is such an indication. But this argument claims too much, for it would have the effect of almost entirely obliterating the rule itself. The remainder here provided for is, in substance, the one that is common in cases when an estate tail arises by reason of the limiting force of the terms " dying without issue," or similar expressions, grafted on a previous devise in fee. An examination of the long train of cases on this subject will make this clear, and yet it is evident that such ulterior limitations have not been thought to have any effect in hindering the construction in favor of an estate tail.

I will refer to two recent English cases to show how entirely inefficacious to produce the result contended for are limitations of this character. The first of such authorities is

Chetwood v. Winston.

the case of *Feakes* v. *Standley*, 24 *Beav.* 485, the facts being that the testator, after giving his lands to his wife for life, and after her death to his nephew, Charles Feakes, expressed his purpose in these terms : "Also, in case Charles Feakes shall outlive the said Rebecca, my wife, and depart this life without leaving any lawful issue, then it is my will that the said lands, &c., shall be sold by his executors, and the money arising from such sale shall be divided, share and share alike, between the said families, nearest of kin of me, Charles Lacey, and of the said Rebecca, my wife, jointly." On the argument it was urged that as a sale was ordered to be made, and that such sale was to be made by the executor of the devisee, Charles Feakes, this pointed to something to be done immediately on his death, and that the limitation over was not dependent on an indefinite failure of his issue, but the master of the rolls, Sir John Romilly, thought the matter too plain to call for deliberation, and decided that an estate tail was created. The other case referred to is that of *Simmons* v. *Simmons*, 8 *Simons* 22. A testator gave all his real and personal property to his daughter for her separate use for life, and then followed in the will these words : "At her decease she shall be at liberty to will the same to her issue ; but in case of her dying without issue, I wish the property to go to my brother and sister for their lives." It was contended that this gift of a life estate to the testator's brother and sister evinced an intention not to vest an estate tail in the daughter, but the court was of the opposite opinion.

In the present case, I think, as I have said, that an estate tail was created by the testamentary clause in question, and consequently the judgment below, in favor of the defendant, should be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, REED, SCUDDER, WOODHULL, CLEMENT, DODD, GREEN, LILLY. 11.

*For reversal*—None.